THE BANK OF CALIFORNIA, Respondent, *v.* WILLIAM H. WEBB et al., Appellants.

A debtor paying money to a creditor, to whom he owes several debts, must, as a general rule, exercise his option as to the application of the payment at the time it is made.

If no direction is then given by him the creditor may control the application; and, as between him and the debtor, there is no limit of time within which he must make the application, save that it be before it is made under the direction of the court, at least unless the debtor requests him to exercise his option.

Defendants guaranteed the payment of all drafts drawn by A. upon the A. G. Co. during a period ending July 31, 1879, provided the amount guaranteed should not at any one time exceed $13,000; the guaranty to be continuous, and upon payment of any draft, to be in full force as to any others until payment of the last draft drawn during the period named.   A. drew a draft for $13,000, and subsequently another for $8,000, neither of which was paid at maturity.   In an action upon the guaranty the complaint averred the non-payment of the first draft.   Defendants alleged and gave evidence tending to show a payment made after the commencement of the action of $2,144; more than a year thereafter it was credited by plaintiff against the $8,000 draft. *Held*, that plaintiff had

the right to so credit it; but that even if this were otherwise, as if credited upon the first draft the guaranty would then attach to so much of the second, no harm was done defendants by the application, and if none had been made, such an application by the court would have been just and equitable, and would have been sanctioned by established rules.

(Argued December 4, 1883 ; decided January 15, 1884.)

APPEAL from judgment of the General Term of the Superior Court of the city of New York, entered upon an order made the first Monday of March, 1882, which affirmed a judgment in favor of plaintiff, entered upon a verdict. (Reported below, 16 J. & S. 175.)

This action was brought upon a guaranty, the substance whereof is set forth in the opinion. The complaint alleged the drawing of a draft or bill of exchange on June 30, 1879, by Adams, referred to in said guaranty, and which was covered thereby for the sum of $13,000 at sixty days' sight, which was, before maturity, indorsed by the payees to plaintiff; also the presentation thereof for payment at maturity, refusal and protest.

The material facts are stated in the opinion.

*T. E. Stillman* for appellants. The plaintiff never having applied, the payment of $2,144, the law will now do it equitably as the justice and circumstances of this case require, having due regard to the position of all parties. (*Stone* v. *Seymour*, 15 Wend. 20, 29, 33; *Campbell* v. *Vedder*, 3 Keyes, 174; *Cowperthwaite* v. *Sheffield*, 1 Sandf. 416 d, 452; 3 N. Y. 243, 246; *Righter* v. *Stall*, 3 Sandf. Ch. 608, 612; *U. S.* v. *Kirkpatrick*, 9 Wheat. 720; *Wright* v. *Wright*, 7 Daly, 55; 72 N. Y. 149; *Pattison* v. *Hull*, 9 Cow. 747; *Dows* v. *Morewood*, 10 Barb. 183; *The Antarctic*, 1 Sprague, 206; *Dorsey* v. *Gassaway*, 2 H. & J. 402; *Neal* v. *Allison*, 50 Miss. 175; *Windsor* v. *Kennedy*, 52 id. 164; *Pierce* v. *Sweet*, 33 Penn. St. 151; *Jackson* v. *Johnson*, 11 Hun, 509; *Bridenbecker* v. *Lowell*, 32 Barb. 9, 22, 23; Story's Eq. Jur., § 459c, note 3; *Marryatts* v. *White*, 2 Starkie, 101.) In this case equity requires that the payment of $2,144 should be applied at least *pro rata* upon

the two drafts. (*Emery* v. *Tichout.* 13 Vt. 15 ; *Ramsour* v. *Thomas,* 10 Ired. [N. C.] 165.)

*Everett P. Wheeler* for respondent. When a debtor makes a payment, he has the right to direct the application, because it is his money which is being paid. If he fails to make any application, the creditor may make it. If none is made by either party, then the court directs such application as in equity and in justice it should. ( *Wright* v. *Wright,* 7 Daly, 55 ; 72 N. Y. 149 ; *Stone* v. *Seymour,* 15 Wend. 20.) Defendants had no equitable right as sureties to have the payment of $2,144 applied on the $13,000 draft. (*Harding* v. *Tifft,* 75 N. Y. 461 ; *Allen* v. *Culver,* 3 Denio, 285 ; *Stone* v. *Seymour,* 15 Wend. 20 ; *B'k of Newburgh* v. *Bigler,* 83 N. Y. 51.) The creditor's right of application was not limited to the time of the payment to him. (*Sheppard* v. *Steele,* 43 N. Y. 53 ; *Mayor, etc.,* v. *Patten,* 4 Cranch, 317 ; *Simpson* v. *Ingham,* 2 B. & C. 65 ; *Wilkinson* v. *Stern,* 9 Mod. 427 ; *Philpot* v. *Jones,* 4 N. & M.) If, however, the court be of opinion that after suit brought no application of previous payments can be made by the parties, and that the defendants have sufficiently established that no application was made before the suit, the court ought to apply this payment on the $8,000 draft. (*Field* v. *Holland,* 6 Cranch, 8 ; *Briggs* v. *Williams,* 2 Vt. 283 ; *Hilton* v. *Burley,* 2 N. H. 193, 196 ; *Blackstone B'k* v. *Hill,* 10 Pick. 129, 133 ; *Chester* v. *Wheelwright,* 15 Conn. 562 ; *Stamford B'k* v. *Benedict,* id. 437, 445 ; *Jones* v. *Benedict,* 83 N. Y. 79.)

EARL, J. In July, 1878, the defendants gave the plaintiff their written guaranty whereby they guaranteed the payment at maturity of any and all drafts that might be drawn at sixty days sight by Mr. Adams, the agent of the American Guano Company at Honolulu, on that company in New York, between the 1st day of August, 1878, and the 31st day of July, 1879, provided that the amount guaranteed should not at any one time exceed the sum of $13,000 ; and it was stated in the

writing that the guaranty was to be continuous during the period named, and that upon the payment by the company of any of the drafts the guaranty was again to be in full force and effect, as to any other of the drafts until the maturity and payment of the last draft made during the period named. Thereafter on the 30th day of June, 1879, Adams as agent of the Guano Company drew a draft at sixty days sight upon the company for $13,000, payable to the order of Bishop & Co. and on the 7th day of July he drew a similar draft for $8,000. Both drafts were by Bishop & Co. before maturity indorsed to the plaintiff; and both were accepted, were unpaid at their maturity and were duly protested for non-payment. In November, 1879, this action was commenced against the defendants upon their guaranty, to recover the amount of the first draft. In their answer they admit the drawing of the draft, its acceptance, non-payment, protest, a demand upon them for its payment and their refusal to pay; and they allege that the Guano Company had delivered to the plaintiff a bill of lading of a cargo of guano on board ship worth about $8,000, which cargo had been sold, or would soon be sold, and that the proceeds thereof were to be applied and should be applied upon the draft in suit; and also that the company had in January, 1880, paid to apply upon the draft the further sum of $2,545.47. Upon the trial of the action which took place in December, 1881, the plaintiff called as a witness Henry B. Laidlow of the firm of Laidlow & Co., who were its New York agents, who proved the indorsement of the draft to the plaintiff, and that since the commencement of the action two payments of $1,500 each, made respectively December 20, 1880, and June 25, 1881, had been made upon the draft. He was then cross-examined by defendants' counsel, and testified that Bishop & Co. were bankers in Honolulu and that the receipt for the bill of lading dated October 21, 1879, mentioned in the answer, reciting that the bill was on account of the two drafts, was sent by them to him, and that the proceeds of the guano were $7,199.92, and that the plaintiff had also through Bishop & Co. at Honolulu, on the 6th day of January, 1880, received the further sum of

$2,144. The sole controversy between the parties is as to the application of this sum, the plaintiff claiming that it was applicable upon the draft for $8,000, and the defendant that it was applicable *pro rata* upon the two drafts. The court below held that none of it was applicable upon the draft in suit, and we are of the same opinion.

The defendants alleging payment of the sum of $2,144 upon the two drafts were required to prove the payment, and this they attempted to do by the cross-examination of plaintiff's witness Laidlow. He had no personal knowledge of the payment; all he knew about it was from information communicated to him by letter from Bishop & Co. If his evidence were stricken out or disregarded, then the defendants would have no evidence whatever of the payment. We must, therefore, take his evidence about the payment as he gave it, and that is that in September, 1881, Bishop & Co. informed him by letter that the payment had been made January 6, 1880, and he then as the authorized agent of the plaintiff credited the amount against the draft of $8,000. Plaintiff offered to read in evidence the letter of Bishop & Co. advising Laidlow & Co. of the payment, but it was excluded on the ground that it was a mere declaration of past events by Bishop & Co. The exclusion was improper. All the proof the defendants had of the payment was the information conveyed by that letter, which was called out upon their cross-examination of plaintiff's witness. They thus made the contents of the letter their evidence, and the plaintiff was entitled to have it read in evidence. Either that letter was competent or the entire evidence of the witness was incompetent and should have been stricken out or disregarded. We must then take it as proved in this case that this sum was received by the plaintiff in January, 1880, after the commencement of this suit, and more than a year thereafter credited against the draft for $8,000. That it had the right thus to apply the payment is established by abundant authority. (*Stone* v. *Seymour*, 15 Wend. 20; *Sheppard* v. *Steele*, 43 N. Y. 53; 3 Am. Rep. 660; *Harding* v. *Tifft*, 75 N. Y. 461; *Nat. Bank of Newburgh* v. *Bigler*, 83 id. 51; *Mayor*

*of Alexandria* v. *Patten,* 4 Cranch, 317; *Simson* v. *Ingham,* 2 Barn. & Cress. 65; *Philpott* v. *Jones,* 4 Nev. & Man. 14; *Field* v. *Holland,* 1 American Lead. Cases, 362.) The rules as gathered from these authorities, subject to some modifications depending upon circumstances which do not exist in this case, are as follows: A debtor paying money to a creditor to whom he owes several debts may direct the application of the payment because the money is his and he may do as he will with it and control its application. But the debtor must exercise his option as to the application when he makes the payment. After that the money has ceased to be his and is no longer subject to his control. Then it belongs to the creditor, and he is master of it, and may control its application. As between him and his debtor, certainly unless the debtor intervenes and requests him to exercise his option, there can be no limit of time within which he must make the application. But if neither party makes any application of the payment and the matter comes into court, then the court will make such application of the payment as equity and justice require. Here the debtor, the Guano Company, made no application of the payment at any time, and hence the creditor, the plaintiff, could at any time make the application before it was made under the direction of the court, and so the application here made was not too late.

But we think there is another view of this case still more favorable to the plaintiff. The guaranty of the defendants was a continuing one to the extent of $13,000. It was not confined to drafts amounting to just $13,000, or to not more than that sum or to just one draft drawn for that sum. Such was clearly not the purpose and understanding of the parties. The defendants were willing to guarantee all the drafts of the company, only limiting the amount of their liability upon all of them at any one time to the sum of $13,000. There might be one draft for $13,000 or more. There might be several drafts amounting in the aggregate to $13,000 or more. But in no event was the liability of the defendants to exceed $13,000. Up to that amount it was to be effectual to

the plaintiff. It, therefore, covered the two drafts, and both were unpaid. The plaintiff recovered less than $7,000 in this action. The defendants were liable to the plaintiff on account of the other draft for the balance up to $13,000. The plaintiff could have sued upon the guaranty on account of both drafts, and could after applying all the payments have recovered $13,000, the full extent of defendants' liability. Hence no harm was done to them by applying the $2,144 upon the draft for $8,000. So long as there was $13,000 due upon both drafts it could make no legal difference with the defendants how the payments were applied. As the case now appears, if all these payments, made after the commencement of this action, could have been applied upon the $8,000, leaving the plaintiff to recover the $13,000 in this action, it would have been entirely just and equitable, and if the parties had made no application of them, such an application would have been sanctioned by rules of law laid down in the authorities cited.

We are, therefore, of opinion that the judgment should be affirmed.

All concur.

Judgment affirmed.